UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH SMITH,

       Petitioner,

                             CASE NO. 10-cv-11995
v.                              HONORABLE VICTORIA A. ROBERTS

ROBERT NAPELS,

       Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT**
**GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

On May 18, 2010, petitioner Joseph Smith filed a *pro se* habeas corpus petition

under 28 U.S.C. § 2254.  The pleading challenges Petitioner's convictions for armed

robbery, carjacking, third-degree fleeing or eluding, and four firearm offenses.  Counsel

for Respondent Robert Napels urges the Court to deny the petition.  The Court finds no

merit in Petitioner's claims.  Accordingly, the habeas petition is denied.  A procedural

history and discussion follow.

**I.  Background**

Petitioner was charged in Oakland County, Michigan with eight counts:  armed

robbery, MICH. COMP. LAWS § 750.529; bank robbery, MICH. COMP. LAWS § 750.531, as

an alternative count to count one; carjacking, MICH. COMP. LAWS § 750.529a; felon in

possession of a firearm, MICH. COMP. LAWS § 750.224f; third-degree fleeing or eluding a

police officer, MICH. COMP. LAWS § 257.602a; carrying a concealed weapon (CCW),

MICH. COMP. LAWS § 750.227; and two counts of possession of a firearm during the

commission of, or attempt to commit, a felony (felony firearm), MICH. COMP. LAWS §
750.227b. The charges arose from the robbery of a bank in Farmington Hills, Michigan
and a subsequent police chase during which Petitioner crashed into a vehicle and then
tried to escape from the police using another person's vehicle.

Trial evidence established that Petitioner walked into the Bank of America in
Farmington Hills on September 5, 2006, and handed teller Betty Petrusha a note, which
stated, "This is a robbery, I have a gun. Give me the money, no dye packs or I will kill
you. 100's and 50's only." Petrusha thought it might be a joke, but Petitioner shook his
head and patted his left side. She did not see a gun, but she heard something hitting an
object when Petitioner patted his side. She gave Petitioner the money in her teller
drawer; included in the bills was some bait money. After Petitioner took the money and
left, Petrusha hit the alarm button and informed a fellow employee, Sonya Haio, of the
robbery. Ms. Haio looked out the window and saw Petitioner get into a white mini van.
Petrusha and Haio gave the police a description of the suspect and his van.

Police Officer Jeffrey Medici received a radio dispatch about the bank robbery.
He saw a white van traveling southbound on Telegraph Road. Because the van and
driver fit the description given to him, he followed the van, called for help, and activated
his lights and siren.

Sergeant Michael Mellec also heard the announcement about the bank robbery.
The suspect's van approached him in the area of Telegraph and Ten Mile Roads. He
followed it and led the chase with Officer Medici following as backup. The suspect
ignored Mellec's lights and sirens, and at the intersection of Eight Mile and Beech
Roads, the suspect disregarded a traffic signal and collided with another vehicle.

2

Officer Medici then observed Petitioner flee from the white van and get into a red Dodge Neon whose four occupants piled out of the driver's door.  Petitioner attempted to drive the car from the scene, but Sergeant Mellec fired two gunshots at Petitioner, who then raised his hands and exited the car.  The two officers handcuffed and arrested Petitioner.

Officer Pamela Beesley transported Petitioner to the Oakland County Jail and told him that he was lucky he did not get shot.  Petitioner responded, "You guys are lucky I didn't shoot you.  I do practice and know how to shoot my gun."

Evidence technician Mark Malott arrived on the scene and inspected the white van.  Inside the van, he found $ 1,682, including the bait money from the bank, and the demand note that was used at the bank.  He collected a baseball hat and a pair of sunglasses because he had information that the suspect was wearing a hat and sunglasses during the robbery.  He found a loaded gun and a cell phone in the Dodge Neon.

Defense counsel stipulated that Petitioner was convicted of a prior felony, and Detective Damian Woodmore testified that Petitioner had not applied to have his right to carry a weapon reinstated.  Petitioner testified in his own behalf and admitted that he had four prior convictions for theft or dishonesty.  He also conceded that he was guilty of the current charges of bank robbery and fleeing or eluding the police, but he denied having a gun or an intention to keep the Dodge Neon.

Defense counsel argued to the jury that Petitioner fled from the police and was guilty of bank robbery, but that the prosecution had failed to prove Petitioner was guilty of carjacking and the gun counts.  On March 28, 2007, the jury found Petitioner guilty of

3

armed robbery, carjacking, felon in possession of a firearm, third-degree fleeing or eluding a police officer, CCW, and two counts of felony firearm.  The trial court sentenced Petitioner as a fourth habitual offender to concurrent prison terms of sixty to one hundred years for the robbery and carjacking convictions, and five to twenty years for the felon-in-possession, fleeing or eluding, and CCW convictions.  Petitioner is to serve the carjacking and felon-in-possession sentences consecutively to concurrent terms of two years in prison for the felony firearm convictions.

Petitioner raised his habeas claims in the Michigan Court of Appeals, which affirmed his convictions in an unpublished, *per curiam* opinion.  *See People v. Smith*, No. 277901 (Mich. Ct. App. Dec. 23, 2008).  Petitioner raised the same issues in the Michigan Supreme Court, but the state supreme court denied leave to appeal on May 27, 2009, because it was not persuaded to review the issues.  *See People v. Smith*, 483 Mich. 1020 (2009) (table).

Petitioner filed his habeas corpus petition on May 18, 2010.  He alleges that:  (1) the prosecution abused its discretion by proceeding with the armed robbery charge instead of the more specific charge of bank robbery; (2) there was insufficient evidence to support his carjacking conviction; (3) the trial court abused its discretion when it permitted the prosecutor to impeach him with three prior theft convictions; (4) the prosecutor committed misconduct by vouching for two prosecution witnesses and by calling Petitioner a liar; (5) the trial court erred by allowing Officer Beesley to testify about her interrogation of Petitioner even though she did not inform Petitioner of his constitutional rights; (6) the jury had a preconceived opinion of Petitioner's guilt because they learned that he was in custody; and (7) the cumulative effect of the errors requires

a new trial.

Respondent argues in an answer to the petition that the first and fourth habeas claims are procedurally defaulted, the third claim is not cognizable on habeas corpus review, and the remaining claims lack merit. The Court elects to excuse the alleged defaults because Petitioner's claims lack substantive merit, and procedural default is not a jurisdictional limitation. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010).

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Discussion

#### A. Proceeding on Alternative Grounds

Petitioner alleges that the prosecution abused its discretion by proceeding with the armed robbery charge instead of only the bank robbery charge. Petitioner says that under state law, the prosecutor was obligated to charge him with the more specific charge (bank robbery) rather than the more general charge (armed robbery). He contends that the prosecutor charged him with armed robbery to enhance the sentencing guidelines and to take advantage of the mandatory two-year minimum sentence found in the armed robbery statute. Petitioner argues that the resulting conviction is unduly harsh, constitutes cruel and unusual punishment, and violates his rights to equal protection and due process of the law.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not object in the trial court to being charged with alternative counts. The Court of Appeals determined that plain error did not occur, because there

6

was factual support for both charges and because the prosecution had discretion to

charge Petitioner in the alternative with both offenses.

The United States Supreme Court explained in *Bordenkircher v. Hayes,* 434 U.S.

357 (1978), that,

> [i]n our system, so long as the prosecutor has probable cause to believe
> that the accused committed an offense defined by statute, the
> decision whether or not to prosecute, and what charge to file or bring before a
> grand jury, generally rests entirely in his discretion.  Within the limits set by
> the legislature's constitutionally valid definition of chargeable offenses,
> "the conscious exercise of some selectivity in enforcement is not in itself a
> federal constitutional violation" so long as "the selection was [not]
> deliberately based upon an unjustifiable standard such as race, religion, or
> other arbitrary classification."  *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct.
> 501, 506, 7 L. Ed.2d 446 [1962].

*Id.* at 364 (footnote omitted).

"[W]hen an act is punishable under more than one statute, 'the Government may

prosecute under either so long as it does not discriminate against any class of

defendants.'"  *United States v. Green*, 654 F.3d 637, 652 (6th Cir. 2011) (quoting *United*

*Sates v. Batchelder*, 442 U.S. 114, 123-24 (1979)), *cert. denied*, __ U.S. __, 132 S. Ct.

1056 (2012); *see also United States v. Hamel*, 551 F.2d 107, 113 (6th Cir. 1977)

("When the same conduct is prohibited by two penal statutes, the government may

proceed under either and the defendant may not complain if the government elects to

proceed under the harsher one.").  "This rule is not changed by the circumstance that

one of the applicable statutes is general and the other specific."  *United States v.*

*Armijo*, 834 F.2d 132, 136 (8th Cir. 1987); *see also United States v. Quigley*, 798 F.

Supp. 451, 456-57 (W.D. Mich. 1992) ("[T]he fact that an alternative statute exists for

prosecuting a particular offense does not preclude prosecution under a more general

offense, as the decision is generally a matter of prosecutorial discretion.") (citing *United States v. Oldfield*, 859 F.2d 392, 398 (6th Cir. 1988)).

Evidence supported the charges for both armed robbery and bank robbery,[1] and

_____

[1]  The unarmed robbery statute reads in relevant part:

A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

MICH. COMP. LAWS § 750.530(1).

The armed robbery statute reads in relevant part:

A person who engages in conduct proscribed under section 530 [the unarmed robbery statute] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

MICH. COMP. LAWS § 750.529.

The evidence in this case established that Petitioner committed a larceny, frightened the bank teller, and wrote in his demand note that he had a gun.  Thus, there was a factual basis for charging Petitioner with armed robbery.

The bank robbery statute reads:

Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of

there is no indication that the prosecutor charged Petitioner for an improper reason such as race, religion, or some arbitrary classification.

The Court concludes that the prosecutor did not violate Petitioner's constitutional rights by charging him in the alternative with armed robbery and bank robbery. The state appellate court's rejection of Petitioner's claim did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

## B. Sufficiency of the Evidence

Petitioner alleges there was insufficient evidence to support his carjacking conviction. Petitioner claims that he did not steal or even take the Dodge Neon and that his conduct did not amount to carjacking, because (1) he gave the occupants the option of remaining in the vehicle and (2) he intended to use the vehicle for the limited purpose of escaping from the police. The Michigan Court of Appeals disagreed with Petitioner and decided that the evidence was sufficient to sustain his conviction.

The relevant question on review of a sufficiency-of-the-evidence claim "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

---

a felony, punishable by imprisonment in the state prison for life or any term of years.

MICH. COMP. LAWS § 529.531.

Petitioner admitted at trial that he intended to take money from the bank. He also admitted that he handed the teller a note, which included a threat to kill her if she did not comply with his demand for money. The facts, therefore, also supported the charge of bank robbery.

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Jackson* claims are subject to two layers of judicial deference in federal habeas corpus proceedings: deference to the jury's verdict and deference to the state court's decision. *Coleman v. Johnson*, __ U.S. __, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*); *Nali v. Phillips*, 681 F.3d 837, 841 (6th Cir. 2012), *petition for cert. filed*, No. 12-5974 (U.S. Aug. 22, 2012).

Courts must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n.16. To sustain a carjacking conviction in Michigan, "the prosecution must prove (1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear." *People v. Davenport*, 230 Mich. App. 577, 579 (1998) (citing *People v. Green*, 228 Mich. App. 684, 694 (1998)).

Susan Neal testified at trial that a man approached the passenger side of the Dodge Neon she was driving on September 5, 2006, and announced that he was taking the car. The man entered the car, crawled over her daughter who was seated in the front passenger seat, and pushed Ms. Neal out of the way as she was opening the driver's door to get out. All four occupants of the car managed to get out of the car. The man then put the car in reverse and slammed into the car behind them; he put the car in drive and slammed into the car in front of them. He did not have permission to take the vehicle, and, if the police had not arrived, he would have been able to drive

10

away.  (Tr. Mar. 26, 2007, at 255-68.)

Ms. Neal's nineteen-year-old daughter, Corie Traver, testified that the man grabbed her car door and ordered the occupants to drive or get out of the car.  He pointed a gun at her and got in the car, climbing over her to the driver's seat where he pushed her mother out of the car.  He then tried to drive the car.  (*Id*. at 274-80.)

Although neither Ms. Neal, nor Ms. Traver, could identify Petitioner at trial, Sergeant Michael Mellec testified that he saw Petitioner open the passenger door of the Dodge Neon and point a gun at the occupants.  According to Sergeant Mellec, the occupants were trying to get out of the car and comply with Petitioner's demands. Sergeant Mellec later saw a gun on the front seat of the Neon.  (Tr. Mar. 26, 2007*,* at 224-26, 229-31, 245-46.)   Police Officer Jeffrey Medici also saw Petitioner climb into the Dodge Neon, and he, too, observed a loaded handgun lying on the front seat of the Neon after Petitioner was taken into custody.  (*Id*., at 183, 199-200).

Petitioner argues that he did not actually take the vehicle, but merely wanted to use it to get away from the police.  "[A] defendant 'takes' a motor vehicle 'from' another when he acquires possession of the motor vehicle through force or violence, threat of force or violence, or by putting another in fear." *People v. Green*, 228 Mich. App. at 695-96.  Taking a vehicle "does not require that the victim be physically separated from the motor vehicle.  The hallmark of possession is dominion and control." *Id.* at 696.

Here, there was evidence that Petitioner took possession of the Dodge Neon by threatening the occupants with a gun and announcing that he was taking the car.  He then got in the driver's seat without permission and attempted to drive away.  He took possession of the Neon by exercising dominion and control over it, and his actions

11

implied that he intended to permanently deprive the occupants of the car.  There was no indication that he intended to return the car if he succeeded in getting away.  In fact, he testified that he did not think that far into the future.  (Tr. Mar. 27, 2007, at 414.)  And even assuming that he gave the occupants the option of remaining in the vehicle, their presence in the Neon did not diminish Petitioner's exercise of possession.  *People v. Green*, 228 Mich. App. at 696.

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner took a motor vehicle from another person, in the presence of people in lawful possession of the vehicle, and did so by force, by threat of force or violence, and by putting the occupants in fear.  Thus, there was sufficient evidence of a carjacking, and the state appellate court's decision was not contrary to, or an unreasonable application of, *Jackson*.

## C.  Evidence of Prior Convictions

Petitioner states that the trial court abused its discretion when it permitted the prosecutor to impeach him with his prior convictions for receiving or concealing stolen property and unlawful use of a motor vehicle.  Petitioner maintains that two of the prior convictions should not have been used for impeachment purposes under Michigan Rule of Evidence 609 because they were more than ten years old, and a third offense was almost ten years old.  Petitioner concludes that the probative value of the prior convictions was essentially nil.

Generally, issues dealing with the admissibility or exclusion of evidence may not be questioned in a federal habeas corpus proceeding, *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000), and the contention that the trial court violated Michigan Rule of

12

Evidence 609 lacks merit because "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). But if a state court's "evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner's prior convictions had some probative value on the issue of Petitioner's credibility because they involved a form of theft, deceit, or dishonesty. Furthermore, defense counsel conceded for purposes of the felon-in-possession count that Petitioner had a prior conviction, and Petitioner was not deterred from testifying even though he knew that evidence of his prior convictions would be admitted at trial. The Court therefore concludes that the trial court's evidentiary ruling was not fundamentally unfair and did not deprive Petitioner of his right to due process.

Even if constitutional error occurred, the evidence against Petitioner was substantial, and the trial court instructed the jurors that the evidence of past crimes should not be treated as evidence that Petitioner committed the crimes charged in this case. (Tr. Mar. 27, 2007, at 465-66.) In light of the trial court's jury instruction and the substantial evidence against Petitioner, the information about his prior convictions could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). The jury likely based its verdict on the strength of the testimony about the current charges, not Petitioner's past conduct. Any evidentiary error was harmless.

**D. The Prosecutor**

13

The fourth habeas claim challenges the prosecutor's comments during closing arguments. Petitioner contends that the prosecutor committed misconduct by vouching for two prosecution witnesses and by calling him a liar.

The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not object to the prosecutor's comments at trial. The Court of Appeals concluded that plain error did not occur, because the prosecutor did not vouch for the credibility of her witnesses, and merely offered plausible explanations for why some of the testimony conflicted with other evidence. The Court of Appeals also stated that it was not improper for the prosecutor to argue from the evidence that Petitioner was a liar.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). To prevail on a prosecutorial-misconduct claim, a habeas petitioner must demonstrate that the prosecutor's conduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The misconduct must have been "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). Federal courts in this Circuit

> apply a "two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render [the petitioner's] trial fundamentally unfair." *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir. 2009). [Courts] first determine whether the prosecution's conduct was improper. *Id.* Second, [courts] determine whether that improper conduct was flagrant by considering four factors: "(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive;

14

and (4) whether the remarks were made deliberately or accidentally." *Id.* (internal quotation marks omitted).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012), *petition for cert. filed,* No. 12-5231 (U.S. July 10, 2012).

Claims of prosecutorial misconduct also are subject to harmless-error analysis. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (citing *Hill v. Brigano*, 199 F.2d 833, 847 (6th Cir. 1999)).  As noted above, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 623.

### 1. Vouching

Petitioner claims that the prosecutor vouched for her witnesses when she stated during closing arguments that bank teller Betty Petrusha was trying to be honest and that Corie Traver, owner of the Dodge Neon, honestly believed Petitioner fired his gun, as she claimed in her statement to the police.

> "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness." [*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)].  This generally involves either blunt comments asserting personal belief, or comments that imply special knowledge of facts not before the jury or the credibility or truthfulness of the witness.  *Id.*

*United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).

### a. Betty Petrusha

The prosecutor's comments must be viewed in context.  Ms. Petrusha testified on cross-examination by defense counsel that the demand note found in Petitioner's van did not look like the note Petitioner presented to her.  She could not recall seeing the

15

comment about fifty and one-hundred dollar bills, nor the comment about not giving the robber any dye packs.   (Tr. Mar. 26, 2007, at 146.)  In her closing argument, the prosecutor said,

> Betty Petrusha, bless her little heart, was trying to be so honest she said I don't know if that's the note or not.  I don't think it is, because I don't remember denominations and dye packs.

(Tr. Mar. 27, 2007, at 436.)

These remarks, although intentional, were brief.  They could not have misled the jury or prejudiced Petitioner because they pertained only to Petrusha's testimony about the demand note, and they merely emphasized Petrusha's inability to say whether the demand note in evidence was the note that Petitioner presented to her.  Therefore, even if the prosecutor's remarks about Betty Petrusha amounted to improper vouching, the misconduct was not flagrant.

### b.  Corie Traver

Corie Traver testified about the carjacking.  She said that Petitioner approached her door and instructed the occupants to drive or get out.  (Tr. Mar. 26, 2007, at 274-77.)  On cross-examination, Ms. Traver admitted to telling the police at the crime scene that Petitioner fired a gun during the incident.  She maintained at trial that Petitioner fired a gun during the incident (*id.* at 283-85), even though the other evidence established that Sergeant Mellec fired the gunshots (*id.* at 228).

During her rebuttal argument, the prosecutor said:

> She [Corie Traver] tried to be truthful in her written statement.  She honestly believed that the person who was shooting the gun was the bad man who just pointed it in her mother's face.  She was wrong.  It was the sergeant.  That doesn't make her a liar or incredible.  It makes her wrong, but she certainly wasn't trying to be wrong.  She used deductive reasoning

16

to say the bad man got into my car with a gun, as soon as I got out, there
were shots fired and she thought it was him, period.

(Tr. Mar. 27, 2007, at 454-55.)

The prosecutor was not vouching for Ms. Traver, but explaining why that part of
Traver's testimony was inaccurate.  The remarks helped Petitioner to the extent that
they demonstrated witnesses can be wrong.

Even if the quoted remarks were improper, the testimony of Susan Neal and the
police officers who chased Petitioner was sufficient to convict him of the carjacking.
Therefore, the remarks about Ms. Traver could not have had a substantial and injurious
effect on the jury's verdict and were harmless.

### 2.  Calling Petitioner a Liar

Petitioner admitted at trial that he committed two of the seven charges against
him:  bank robbery and fleeing or eluding the police.  He nevertheless maintained that
he did not possess a firearm when he went in the bank on September 5, 2006, nor
when he was driving his van and trying to elude the police, nor when he approached the
occupants of the Dodge Neon.  (Tr. Mar. 27, 2007, at 382-85, 390.)  Although the bank
teller did not see a gun during the robbery, a police officer subsequently saw Petitioner
point a gun at the occupants of the Dodge Neon, and a gun was found in the Dodge
Neon following Petitioner's arrest.

In her closing argument, the prosecutor called Petitioner a liar and stated that
Petitioner proved to the jury on the stand that he had no credibility and was trying to
wiggle out of a few charges.  (*Id.* at 444.)  In her rebuttal argument, the prosecutor said:

> The assertion that he is an honest individual because he's
> conceding two of seven charges is ridiculous.  Obviously from his

17

testimony, it's clear this is not a truthful individual.  He's a thief, he's a liar, period.

(*Id.* at 458.)

When, as in this case, a defendant testifies, "a prosecutor may attack his credibility to the same extent as any other witness."  *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999).  When emphasizing discrepancies between the evidence and the defendant's testimony, a prosecutor may even assert during closing arguments that the defendant is lying.  *Id.*  "To avoid impropriety, however, such comments must 'reflect reasonable inferences from the evidence adduced at trial.'"  *Id.* (quoting *United States v. Goodapple*, 958 F.2d 1402, 1490-10 (7th Cir. 1992)).  Because Petitioner testified and because the prosecutor's argument was based on discrepancies between the evidence and Petitioner's testimony, it was not improper to suggest that he lied.

### 3.  Conclusion

The prosecutor's remarks were not improper, and even if they were, the remarks were not flagrant.  Furthermore, the trial court instructed Petitioner's jury that the attorneys' statements and arguments were not evidence, but were meant to help the jurors understand the attorneys' theories.  (Tr. Mar. 27, 2007, at 466).  An instruction such as this one generally can correct improprieties in a prosecutor's closing argument. *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)).  At worst, harmless error occurred, and the Court declines to grant relief based on prosecutorial misconduct.

To the extent Petitioner asserts an independent claim about trial counsel's failure to object to the prosecutor's remarks, the Court declines relief on that claim as well.

18

Because the prosecutor's comments were proper and not flagrant, an objection would have been futile.  Counsel was not ineffective for failing to make futile objections.  *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

### E.  The Alleged Failure to Comply with *Miranda*

Petitioner alleges that the trial court erred by allowing police officer Pamela Beesley to testify about his remark to Beesley after he was taken into custody.  The contested remark was that the police were lucky Petitioner did not shoot them because he practiced and knew how to shoot his gun.  Petitioner contends that Officer Beesley's testimony about his comment to her should have been suppressed because she did not read Petitioner's constitutional rights to him before interrogating him.

The trial court ruled that Petitioner's remark did not occur during an interrogation. The Michigan Court of Appeals agreed that constitutional warnings were not required, that Petitioner's statement was admissible, and that the trial court did not err in permitting Officer Beesley to testify about the remark.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  "To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'"  *Florida v. Powell*, __ U.S. __, __, 130 S. Ct. 1195, 1203 (2010) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989)).  "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make

19

may be used as evidence against him, and that he has a right to the presence of an

attorney, either retained or appointed." *Miranda*, 384 U.S. at 444.

> [T]he Miranda safeguards come into play whenever a person in custody is
> subjected to either express questioning or its functional equivalent.  That
> is to say, the term "interrogation" under Miranda refers not only to express
> questioning, but also to any words or actions on the part of the police
> (other than those normally attendant to arrest and custody) that the police
> should know are reasonably likely to elicit an incriminating response from
> the suspect. . . .  A practice that the police should know is reasonably
> likely to evoke an incriminating response from a suspect thus amounts to
> interrogation.  But, since the police surely cannot be held accountable for
> the unforeseeable results of their words or actions, the definition of
> interrogation can extend only to words or actions on the part of police
> officers that they *should have known* were reasonably likely to elicit an
> incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 300-302 (1980) (footnotes omitted) (emphasis in

original).

Officer Beesley testified at trial that Petitioner was handcuffed and lying on the

ground when she arrived at the intersection of Beech and Eight Mile Roads on

September 5, 2006.  She then transported Petitioner to the Oakland County Jail.  On

the way there, she told Petitioner he was lucky he did not get shot.  According to Officer

Beesley, Petitioner replied, "You guys are lucky I didn't shoot you.  I do practice and

know how to shoot my gun."  (Tr. Mar. 27, 2007, at 338-39.)

Officer Beesley's comment to Petitioner was a statement or assertion, not a

question.  And, because Sergeant Mellec fired two gunshots at Petitioner, one could

expect Petitioner to respond to Officer Beesley's remark by saying that he was indeed

lucky not to have been hit.  Officer Beesley's remark was not the type of remark that she

could reasonably expect would elicit an incriminating response from Petitioner.

Therefore, Officer Beesley's comment to Petitioner was not an interrogation, and

20

*Miranda* warnings were unnecessary.  The trial court's ruling and the state appellate court's decision affirming the trial court were not contrary to, or unreasonable applications of, *Miranda* and *Innis*.

**F.  Information that Petitioner was in Custody**

Petitioner alleges that his trial attorney had a file with his name on it and the words "IN CUSTODY" in green laminate.  Petitioner claims that the file was facing the jury and that he was denied a fair trial because the jury developed a preconceived opinion of his guilt when they learned that he was in custody.  He argues that the error was comparable to having the jury see him in shackles or jail clothes, and, at a minimum, the trial court should have read a cautionary jury instruction.

Petitioner raised this issue while the jury was deliberating.  The trial court dismissed his objection by stating that there were two deputies in the courtroom throughout the trial and the jury would be naive if they did not realize Petitioner was in custody.  (Tr. Mar. 28, 2007, at 494-95.)  The Michigan Court of Appeals held that the folder did not prejudice Petitioner's right to a fair trial and that the trial court did not abuse its discretion failing to take additional action, because the jury should not have been alarmed or surprised to learn that Petitioner might be in custody.

It is not clear from the record whether the jurors actually saw the folder with the words "IN CUSTODY" on it.  Even assuming they did, the Court agrees with the state courts; the jurors would have been naive not to think that Petitioner might be in custody. He was charged with seven serious offenses, and there were two deputies in the courtroom throughout the trial.

Furthermore, the trial court instructed the jurors that Petitioner was presumed

innocent throughout the trial, that they should base their decision on the admissible

evidence, and that they should not let prejudice influence their decision.  (Tr. Mar. 27,

2007, at 464-68.)  "[J]uries are presumed to follow their instructions."  *Richardson v.

Marsh*, 481 U.S. 200,  211 (1987).  Petitioner's right to a fair trial was not violated.

### G.  The Cumulative-Effect Theory

Petitioner's seventh and final claim alleges that the cumulative effect of the trial

errors affected the fairness of the proceedings and undermines the trustworthiness of

the verdict.  The Michigan Court of Appeals stated on review of this claim that, because

no cognizable errors were identified, reversal under a cumulative error theory was

unwarranted.

This Court agrees and further rejects Petitioner's claim; a claim that the

cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not

cognizable on habeas review.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011)

(citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)), *cert. denied,* __ U.S. __,

132 S . Ct. 2751 (2012).

### IV.  Conclusion

The decision of the Michigan Court of Appeals was not contrary to clearly

established Supreme Court precedent, an unreasonable application of Supreme Court

precedent, or an unreasonable determination of the facts.  Accordingly, the Court

**DENIES** the petition for a writ of habeas corpus.

The Court declines to issue a certificate of appealability.  Reasonable jurists

would not disagree with the Court's resolution of Petitioner's claims, nor conclude that

the issues deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003).  Nevertheless, the Court allows Petitioner to proceed in forma pauperis

if he chooses to appeal this decision; an appeal could be taken in good faith.  28 U.S.C.

§ 1915(a)(3).

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 12, 2012

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and Joseph Smith   by electronic means or U.S. Mail on September 12, 2012.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |